**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **BENNIE POITEVINT,** individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**RISE UP FINANCIAL GROUP, LLC,** a California Limited Liability Company, and **JOHN DOE**<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No.: [Case No.]<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Bennie Poitevint ("Plaintiff" or "Poitevint") brings this Class Action Complaint and Demand for Jury Trial against Defendant Rise Up Financial Group, LLC, ("Defendant" or "Rise Up") to stop the Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the Telephone Consumer Protection Act ("TCPA") by placing unsolicited pre-recorded calls to consumers without prior express written consent. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matter, upon information and belief, including investigation conducted by his attorneys.

**INTRODUCTION**

1. Telemarketing calls and text messages are intrusive. A substantial number of people object to these communications, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' id. § 2(6) and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' id. § 2(9).

2. Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by making telemarketing calls using automated or pre-recorded voice messages to Plaintiff and other putative class members as alleged below.

**PARTIES**

3. Plaintiff Poitevint is an individual residing in this district and was present for all causes of action complained of herein within this district of Nashville Tennessee.

4. Defendant Rise Up Financial Group, LLC is a limited liability company headquartered in Irvine, California. Defendant conducts business in this District, Tennessee, and the U.S.

5. Unnamed party John Doe is an unidentified telemarketing entity that places solicitation calls under the instruction, direction, and supervision of Defendant.

## JURISDICTION AND VENUE

6. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 et seq

7. This Court has general personal jurisdiction over Defendant because they regularly do business in this District.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the telephone calls at issue were orchestrated and sent to individuals in this District, and therefore a substantial part of the events giving rise to the claim occurred in this District.

## COMMON ALLEGATIONS

9. Defendant markets unsecured personal loans to consumers.

10. Defendant is not a licensed lender, instead markets such services on behalf of its licensed partners.

11. To generate new customers, Defendant relies on telemarketing.

12. Upon information and belief, Defendant contracted with John Doe to manage Defendant's telemarketing campaign.

13. Defendant's telemarketing campaign consists of artificial or prerecorded voice messages in the form of ringless voicemails.

14. Defendant's telemarketing campaign reached Plaintiff and the putative class without obtaining prior express written consent from the called party.

15. Recent complaints filed on Defendant's BBB page by consumers similar to Plaintiff evidence Defendant's unethical TCPA behavior,

**BUSINESS PROFILE** Share

Debt Relief Service Referral

## RiseUp Financial Group

This business is **NOT** **BBB Accredited**.

Find BBB Accredited Businesses in Debt Relief Service Referral.

MAIN REVIEWS **COMPLAINTS**

### Complaints

The complaint text that is displayed might not represent all complaints filed with BBB. Some consumers may elect to not publish the details of their complaints, some complaints may not meet BBB's standards for publication, or BBB may display a portion of complaints when a high volume is received for a particular business.

**Initial Complaint**

**Date:** 09/08/2025 **Type:** Customer Service Issues

**Status:** Unanswered

This group continues to call me numerous times a day. I asked every person to put me on the do not call list because I am also a home business. They are often very rude as well. The numerous times I asked for the real company's name they would hang up on me because all they will originally say is they are a debt relief group. Once I pressed for the name of the group they would hang up. I kept calling back and was finally able to get the name of the company after name unsuccessful attempts and hang **** This company does nothing but harass me calling nonstop all day long. They often start before I am awake and long into the night when I am in bed.

**Initial Complaint**

**Date:** 08/18/2025 **Type:** Order Issues

**Status:** Unanswered

This company has been calling me almost every single day for the past two months (as of the date of this complaint). I have told them repeatedly I am not interested in their services, I did not sign up for anything, and have asked multiple times to be removed from their call list. I am sick and tired of this harassment and if nothing is done I will have to take matters

16. In response to these calls, Plaintiff brings this case seeking injunctive relief requiring Defendant to cease from violating the TCPA, and an award of statutory damages of the putative class and costs.

## FACTUAL ALLEGATIONS

17. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

18. Plaintiff is the subscriber and sole user of the cell phone number ending in -1962 and is also his only number.

19. Plaintiff uses his cell phone number primarily for personal, residential, and household reasons, including communicating with friends and family members.

20. Plaintiff does not utilize his cell phone for any business purposes.

21. Defendant markets unsecured personal loans on behalf of their licensed lenders.

22. To generate new customers, Defendant relies on telemarketing.

23. Upon information and belief, Defendant hired and contracted with John Doe to manage Defendant's telemarketing campaign.

24. Defendant's telemarketing campaign consists of artificial or prerecorded voice messages in the form of ringless voicemails.

25. The term "Ringless Voicemail" ("RVM") refers to a technology that allows a caller to deposit a prerecorded voice message directly into a consumer's voicemail box without causing the consumer's phone to ring or display a traditional incoming call.

26. A RVM is delivered through the carrier's voicemail server rather than through the public switched telephone network, yet it results in a stored voice message accessible by the called party on their cellular device—making it a "call" within the meaning of the TCPA.

27. RVM's are often employed in large-scale telemarketing campaigns to deliver identical prerecorded solicitations to thousands of consumers simultaneously, circumventing live dialing restrictions while still achieving mass outreach.

28. Upon information and belief, Defendant creates and/or approves of the ringless voicemails used in its telemarketing campaign managed by John Doe.

29. Upon information and belief, Defendant authorizes John Doe to act as Defendant's agent.

30. Upon information and belief, Defendant Rise Up willfully accepts new customers from John Doe that generate through illegal telemarketing.

31. Defendant's business model relies heavily on mass telemarketing campaigns designed to reach as many consumers as possible at minimal cost, regardless of whether such outreach violates the TCPA.

32. According to FCC, a company that outsources its telemarketing activities remains responsible for ensuring that its third-party agents and vendors comply with the TCPA and its implementing regulations.

33. Defendant has been the subject of multiple prior complaints and legal actions for substantially similar conduct, *Newell v. RiseUp Financial Group, LLC*, No. 2:25-cv-01402-JFM (E.D.PA., Mar. 17, 2025), *Fasolino v. RiseUp Financial Group, LLC et al* No. 3:25-cv-00255-KC (W.D.TX., July. 10, 2025).

34. Defendant's continued unlawful behavior, despite prior litigation and notice, evidences a pattern and practice of willful noncompliance and a conscious disregard of federal law.

35. Despite this, Plaintiff received at least four (4) RVM's ("the calls") to his cell phone from John Doe on behalf of Defendant as described below.

Call # 1 – October 16, 2025, at 6:32 PM Caller ID – (724) 490-8072

Call # 2 – October 23, 2025, at 9:31 AM Caller ID – (828) 300-3435

Call # 3 – October 23, 2025, at 3:45 PM Caller ID – (929) 747-1511

Call # 4 – October 24, 2025, at 9:01 AM Caller ID – (858) 351-9311

36. Each of the calls contained the same artificial or prerecorded voice soliciting a "personal loan."

> "Got your pending personal loan. We've tried connecting a few times but haven't had a chance to speak yet from what I can see, your file looks ready. It's nearly approved for $63,000 on a 60-month term with no origination fee. Before we can send the contract out I just need to confirm a couple of quick details with you. If you're available, press 2 now to connect with me or someone from the underwriting team, or if it's easier, you can reach us directly at 866-959-1693."

37. Each of the calls were clearly pre-recorded because (a) they were sent with automated technology used to mask Caller IDs (b) they used a singular monotone voice (c) it was a generic message not personalized for the recipient (d) there was a pause prior to the recorded message being played (e) it instructed Plaintiff "press 2" or to call 866-959-1693.

38. Each of the calls were made to Plaintiff using spoofed phone numbers for the purpose of concealing Defendant's identity and to induce Plaintiff to respond to the calls.

39. Plaintiff never requested personal loan services.

40. Plaintiff has never been a customer of Defendant.

41. On October 24, 2025, Plaintiff responded to the calls by calling 866-959-1693 as instructed by the RVM's.

42. Upon calling the call back phone number, Plaintiff was greeted by a prerecorded message instructing him to "press 1" to speak with a specialist.

43. Plaintiff was connected to a live person "Alex" with John Doe.

44. Alex informed Plaintiff that she was calling regarding a personal loan offer.

45. Alex proceeded to ask Plaintiff a series of qualifying questions supplied by Defendant to determine whether Plaintiff met the minimum eligibility requirements for Defendant's services.

46. Upon information and belief, Defendant instructs its agent, John Doe, to verify whether a consumer is a "qualified lead" before transferring the call to one of Defendant's loan specialists.

47. Alex further explained that, upon meeting the eligibility criteria, Plaintiff would be connected with a loan specialist who would then review the proposed loan terms, interest rate, and monthly payment details.

48. Alex subsequently connected Plaintiff to a loan specialist with Defendant, who identified himself as Juan.

49. Upon connecting, Juan stated, "Good morning, this is Juan with Rise Up Financial."

50. Alex introduced Plaintiff to Juan as follows:

> "Hi Juan, I have Sir Bennie on the line phone number XXX-XXX-1962 and I have confirmed that Bennie meets all minimum requirements to proceed so can you please go over the loan options."

51. Without any disconnect or delay, Juan willfully accepted the call from Alex.

52. Upon information and belief, the uninterrupted nature of the transfer, coupled with the coordinated interaction between Alex and Juan, demonstrates that Defendant Rise Up and John Doe operate as an integrated enterprise.

53. Juan informed Plaintiff that he would perform a soft credit check and ask a few additional qualifying questions in order to approve Plaintiff for a personal loan.

54. After reviewing Plaintiff's credit report, Juan advised Plaintiff he would email Plaintiff his contact information and forward the loan application to Plaintiff's email address.

55. Plaintiff subsequently received an email from Juan from jcarbajal@riseupfinancial.com.

RISEUP FINANCIAL GROUP

Date: Oct 24, 2025

**Dear Bennie Poitevint,**

Thank you for reaching out to us regarding your interest in a loan. We appreciate the opportunity to assist you and are committed to helping you find the right financial solution to meet your needs.

Our team will be in touch shortly to discuss the next steps. If you have any specific questions or additional information you'd like to share, please don't hesitate to contact us at (949) 561-1518 or jcarbajal@riseupfinancial.com.

Best regards,
Juan Carbajal
RiseUp Financial
(949) 561-1518
jcarbajal@riseupfinancial.com

Juan Carbajal | Senior Advisor

Email: jcarbajal@riseupfinancial.com
Office: (949) 561-1518

RISEUP FINANCIAL GROUP

56. The email Plaintiff received from Juan serves as written confirmation and evidence linking Defendant to the alleged calls.

57. Upon information and belief, John Doe conducts telemarketing operations on behalf of Defendant from an offshore or foreign call center.

58. Plaintiff does not presently know the identity of John Doe; however, Defendant maintains the information necessary to ascertain John Doe's identity.

59. The alleged calls at issue were unsolicited, non-emergency communications made without the Plaintiff's prior express written consent.

60. Plaintiff's lead information was generated through unlawful telemarketing activities conducted on behalf of Defendant.

61. The alleged calls were made to Plaintiff with the intent to promote and encourage the purchase of personal loan services on behalf of Defendant.

62. Plaintiff was harmed by the alleged calls.

63. The alleged calls that Plaintiff received by John Doe on behalf of Defendant harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

64. Seeking redress for these injuries, Plaintiff, on behalf of himself and a Class of similarly situated individuals, brings suit under the TCPA.

**VICARIOUS LIABILITY OF DEFENDANT FOR THE ACTIONS OF JOHN DOE**

65. Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as though fully restated in this section.

66. The Federal Communication Commission has instructed that sellers such as Rise Up may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

67. In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. Id. (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

68. The fact, for more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." In re Rules & Regulations Implementing the TCPA, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

69. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."1

70. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

71. The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. Id. at 6587 n. 107.

72. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The

> ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

FCC Rcd at 6592 (¶ 46).

73. Upon information and belief, Defendant contracted with or otherwise directed John Doe to generate leads and initiate telemarketing calls on its behalf.

74. Defendant maintained the right to control the manner and means of John Doe's telemarketing activities, including the scripts, qualifying questions, and criteria used before transferring calls to Defendant's loan specialists.

75. John Doe acted as Defendant's agent and authorized representative, conducting outbound telemarketing calls for the purpose of soliciting business for Defendant's loan services.

76. Defendant knowingly accepted and benefited from calls made by John Doe, including the transfer of "qualified leads" resulting from nonconsensual, prerecorded, or ringless voicemail solicitations.

77. Defendant provided John Doe with instructions, call scripts, and guidance on how to identify consumers who met Defednant's loan services criteria.

78. Upon information and belief, Defendant compensated John Doe based on the volume or success of leads transferred, creating a financial incentive to engage in aggressive or noncompliant calling practices.

79. The telemarketing acts of John Doe are imputable to Defendant under the doctrines of actual authority, apparent authority, and ratification, as Defendant knew or should have known that such conduct violated the TCPA.

80. Defendant's failure to monitor, audit, or restrict the methods used by John Doe demonstrates a willful disregard for TCPA compliance and consumer privacy.

81. Defendant Rise Up knowingly and actively accepted business that originated through illegal calls placed by John Doe.

82. Accordingly, Defendant is vicariously liable for each and every unlawful call, message, or ringless voicemail made or caused to be made by John Doe in violation of the TCPA.

## CLASS ACTION ALLEGATIONS

83. Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Pre-recorded No Consent Class**: All persons in the United States who from four years prior to the filing of this action through class certification (1) The Defendant called and/or any entity making calls on behalf of Defendant (2) using an artificial or pre-recorded voice.

84. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant's, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or

released. Plaintiff anticipates the need to amend the Class definition following appropriate discovery.

85. **Numerosity and Typicality:** On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

86. **Commonality and Predominance:** There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether Defendant and/or its agents placed pre-recorded voicemails or calls to Plaintiff and members of the Pre-recorded No Consent Class without first obtaining consent to make the calls;

(b) whether the calls constitute a violation of the TCPA;

(c) whether members of the Class are entitled to treble damages based on the willfulness of the Defendant's conduct.

87. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to the Class.

88. **Appropriateness:** This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class and as a

whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. The Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on the Defendant's conduct with respect to the Class as whole, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by the Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from the Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Violations of the Telephone Consumer Protection Act**
**47 U.S.C. § 227 (b)**
**(on behalf of Plaintiff and the Pre-recorded No Consent Class)**

89. Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as though fully restated in this section.

90. The Defendant transmitted unwanted telephone calls to Plaintiff and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

91. These pre-recorded voice calls were made en masse without the prior express consent of the Plaintiff and the other members of the Pre-recorded No Consent Class.

92. The Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Pre-recorded No Consent Class

are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing his attorneys as Class Counsel;

b) An award of actual and/or statutory damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA

d) An injunction requiring the Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

/s/ Jeremy Durham
Jeremy Durham (TN Bar no. 027776)
DURHAM FIRM PLLC
1919 Harpeth River Dr
Brentwood, TN 37027
Telephone: (615) 891-0803
jeremyrdurham@gmail.com

*Attorneys for Plaintiff and the Putative Class*

Dated: November 14, 2025